UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CITIGROUP GLOBAL MARKETS, INC.,                      :
                                                     :
                    Interpleader Plaintiff,          :
                                                     :
        v.                                           :
                                                     :          **OPINION AND ORDER**
KLCC INVESTMENTS, LLC and                            :
D AND D TRUST,                                       :          06 Civ. 5466 (LBS)
                                                     :
                    Interpleader Defendants.         :
------------------------------------------------------------------x
KLCC INVESTMENTS, LLC,                               :
                                                     :
                    Counterclaim Claimant,           :
                                                     :
        v.                                           :
                                                     :
CITIGROUP GLOBAL MARKETS, INC.,                      :
                                                     :
                    Counterclaim Defendant.          :
------------------------------------------------------------------x

Appearances:

*For Interpleader Plaintiff Citigroup Global Markets, Inc.:*
John E. Jenkins
Lubiner & Schmidt
216 North Avenue
Cranford, NJ 07016

*For Interpleader Defendant and Counterclaim Claimant KLCC Investments, LLC:*
Richard M. Resnik and Alexander M. Jeffrey, Jr.
Seyfarth Shaw LLP
1270 Avenue of the Americas, Suite 2500
New York, NY 10020

*For Interpleader Defendant D and D Trust:*
Eugene Killian, Jr.
Killian & Salisbury, P.C.
77 Brant Avenue
Clark, NJ 07066

SAND, J.

Citigroup Global Markets, Inc. (Citigroup) initiated this interpleader action under 28 U.S.C. §§ 1335, 1397, and 2361 (2000) to resolve competing claims by KLCC Investments, LLC and D and D Trust to a certain securities account maintained at Citigroup.  KLCC filed a counterclaim against Citigroup for breach of contract, breach of good faith, conversion, and negligence.  Before the Court are: (1) D and D Trust's motion to dismiss for lack of personal jurisdiction or to abstain in deference to parallel proceedings in New Jersey state court, (2) Citigroup's motion for discharge as interpleader plaintiff and to stay other actions relating to the property at issue, and (3) KLCC's cross motion for partial summary judgment dismissing the interpleader action.

I

This case relates to a securities account at Citigroup that was opened in June 2005 by Solomon Dwek.  The account contains various securities, the bulk of which consist of stock in four local banks.  The current value of the assets in the account is approximately $7 million, but the assets are volatile and illiquid.  Citigroup asserts that because the shares held in the account vastly exceed the average daily trading volume of stock in the four banks, any attempt to liquidate the assets would drastically decrease their market value.  (Pl.'s Mem. in Supp. of Mot. to Discharge at 11-13.)  Citigroup further asserts that to maintain the value of the account, the assets must be actively managed and traded.  (Id. at 13-14.)  The assets have not been traded since the initiation of this action and have lost approximately $1 million in value based on the change in share price since April 2006.  (Id. at 14.)  Citigroup claims no interest in the assets.

Shortly after opening the account on June 30, 2005, Dwek, Citigroup, and Kenneth Cayre (the principal of KLCC) executed a control agreement granting KLCC certain rights over the Dwek account.  The control agreement referenced a separate security agreement in which Dwek granted KLCC a security interest in the Dwek account as collateral for a loan from KLCC for Dwek to purchase a certain property in Red Bank, New Jersey pursuant to a separate profit participation agreement.[1]  KLCC claims that these agreements gave it a perfected security interest in the Dwek account.

On October 3, 2005, Dwek opened a $10 million revolving line of credit with Amboy Bank (predecessors in interest to interpleader defendant D and D Trust).[2]  As collateral for this loan, Dwek pledged what was identified in an October 12, 2005 UCC Financing Statement as an investment account held by Brown & Company in the name of Amboy bank worth $10 million. (See Sharpf Decl. Ex. A.)  D and D claims that Dwek promised to fund this account with the assets held in his account at Citigroup, which is the account at issue in this case.  (Scharpf Decl. ¶ 5.)

---

[1] There is a dispute as to whether this debt was ever actually incurred by Dwek in a manner that would give KLCC a valid security interest in the Dwek account.  The profit participation agreement (PPA) provided that KLCC would lend Dwek $14 million on July 18, 2005 to buy 54 Broad Street in Red Bank, New Jersey with the sale to close the same day.  Dwek was to pay back the $14 million on September 30, 2005 plus two thirds of the profit from the contracted sale of the property to a third party for $19 million.  Citigroup asserts that this transaction never took place as public records show that the real property in question never changed hands; therefore there was no underlying debt to create the basis for Dwek's pledge.  KLCC claims that it advanced the $14 million to Dwek, but the real estate transaction never occurred, creating a default condition entitling KLCC to demand the assets in the Dwek account.  KLCC submitted documents to support its contention, but the dates are inconsistent and the documents fail to give a clear picture of what transpired.  KLCC submitted documentation showing that on July 18, 2005, $14 million was transferred, not from a KLCC account, but from Cayre's personal account to a Dwek-controlled entity pursuant to the PPA and a pledge and security agreement executed that same day.  (Cayre Reply Decl. ¶¶ 6-8, Ex. CC.)  The control agreement executed on June 30, 2005, however, appears to give KLCC, not Cayre personally, rights over the Dwek account as a secured party pursuant to a security agreement "dated even date herewith," not dated several weeks later.  (Jenkins Decl. Ex. G.)  KLCC acknowledges that the real estate transaction never took place, but claims that Dwek's failure to close on July 18,2005 was a default event entitling KLCC to the assets in the Dwek account, yet KLCC took no action to obtain those assets until April 2006, after the FBI and PNC Bank began proceedings against Dwek in New Jersey.

[2] Amboy Bank's interest was assigned to D and D Trust on May 31, 2006.

Some time in late January and early February, Dwek attempted to transfer his assets at Citigroup to Brown & Company to be held for Amboy Bank.  On January 31, 2006, Citigroup received a letter on what appeared to be KLCC letterhead with what appeared to be Cayre's signature terminating KLCC's pledge agreement on the Dwek account.  (Jenkins Decl. Ex. K.)  KLCC claims that this letter was a forgery.  On February 15, 2006, Dwek sent a letter directing Citigroup to transfer the assets to Brown & Company.  (Jenkins Decl. Ex. J.)  Amboy Bank was under the impression that this transfer would take several days, and that there may have been a previous pledge agreement on the assets, but that it had been released.  (See D and D Mem. in Supp. of Mot. to Dismiss at 5.)

On February 24, 2006, Citigroup received an email from Cayre's attorney stating that KLCC had not authorized any transfer of assets from the Dwek account and that any transfer would be in violation of the control agreement.  (Jenkins Decl. Ex. L.)  Citigroup terminated the transfer.  Citigroup claims that it attempted to notify Amboy Bank that the transfer had been terminated, but was unsuccessful.  Amboy Bank claims that it received no notice that the transfer was not completed.

On April 24-25, 2006, the FBI and PNC Bank initiated criminal and civil proceedings against Dwek in New Jersey state court for defrauding PNC Bank of $23 million dollars in an unfunded transfer.

On April 26, KLCC instructed Citigroup to liquidate the Dwek account and transfer all of the funds into a KLCC account at HSBC, (Jenkins Decl. Ex. H), but rescinded the order the next day.  (Id. Ex. I.)  Instead, KLCC directed Citigroup to transfer the assets to newly created account at Citigroup in KLCC's name.  On May 1, 2006, at KLCC's direction, Citigroup began

the process of transferring the assets now in KLCC's account at Citigroup to an account at Bear Stearns & Co.

On May 3, 2006, the Superior Court of New Jersey, Monmouth County in <u>PNC Bank v. Dwek</u>, No. MON-C-133-06 issued an order freezing all assets in which Dwek or Dwek-controlled entities had an interest.  The order was published in the Asbury Press the following day, along with an article alleging that Cayre was the recipient of $2 million of the money that Dwek allegedly stole from PNC Bank.

On May 8, 2006, Amboy Bank contacted Citigroup about the status of the aborted February transfer and informed Citigroup that Amboy had an interest in the assets that had been in the Dwek account as collateral for a loan.  In light of this claim and the potential that the assets were frozen by the New Jersey court order, Citigroup halted the transfer of the assets from the KLCC account to Bear Stearns.

Various claims by Dwek's creditors have been consolidated with the PNC Bank case in the New Jersey court before Judge Alexander Lehrer.  Judge Lehrer appointed a fiscal agent to manage the frozen Dwek-owned properties.  In an order dated November 1, 2006, Judge Lehrer appointed the person who had been merely a fiscal agent as the "Trustee in Liquidation," granting him all of the powers of a receiver in bankruptcy.  (Citigroup's Supp'l Mem. at 2-4.) The Trustee in Liquidation was charged with marshalling and liquidating Dwek's assets and distributing them to his creditors.  (<u>Id.</u>)

Citigroup attempted to intervene in the New Jersey action by filing an order to show cause to interplead on June 1, 2006.  When Citigroup learned that the court would not consider interpleader relief for at least 120 days, however, Citigroup withdrew the motion.  Citigroup proposed bringing the matter to federal court by way of consent order which would provide for

the joint management of the assets during the pendency of the action.  On July 14, 2006, after the parties were unable to agree on a joint management plan, KLCC commenced an action in New York state court against Citigroup.  It is unlikely that the New York court would be able to obtain personal jurisdiction over D and D Trust as it is a New Jersey trust and has no contacts with New York.  Citigroup commenced a statutory interpleader action in this Court on July 17, 2006.


II

We deal first with D and D Trust's motion to dismiss for lack of personal jurisdiction or to abstain in deference to parallel proceedings in New Jersey.


*A.  Personal Jurisdiction*

As a threshold matter, D and D Trust argues that the case must be dismissed for lack of personal jurisdiction.  D and D Trust claims that it is a citizen of New Jersey and does not have sufficient minimum contacts with New York to support the exercise of personal jurisdiction by a federal court sitting in New York.

This contention is meritless.  Title 28 section 2361 of the United States Code allows nationwide service of process in statutory interpleader actions which, like the instant action, are brought under § 1335.  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1711 (3d ed. 2001); see State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 529 n.3 (1967).  Therefore, even if it has no contacts with New York, this Court has personal jurisdiction over D and D Trust.

*B.  Abstention in Deference to Parallel Proceedings*

D and D Trust next argues that the Court should abstain in deference to the consolidated Dwek action in New Jersey.

When faced with parallel proceedings in state court, the starting point for federal district courts, as the Supreme Court stated in Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976), is the "virtually unflagging obligation…to exercise the jurisdiction given them."  See Royal & Sun Alliance Ins. Co. of Canada v. Century International Arms, Inc., 466 F.3d 88, 93 (2d Cir. 2006).  The task of the district court is not to find some reason *for* the exercise of federal jurisdiction, but rather to determine whether "exceptional circumstances" or the "clearest of justifications" exist to justify the surrender of that jurisdiction. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983); see also Colorado River, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule.").

The Second Circuit has identified one discrete category of parallel proceedings that generally requires dismissal of the federal court action—bankruptcy proceedings.  See Royal & Sun Alliance, 466 F.3d at 92-93.  A foreign jurisdiction's interest in "the equitable and orderly distribution of a debtor's property" which "requires assembling all claims against the limited assets in a single proceeding" is an interest "deserving of particular respect and deference."  Id. at 93 (quoting Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713-14 (2d Cir. 1987)).  The district courts regularly defer to foreign bankruptcy proceedings.  See Victrix, 825 F.2d at 713-15; accord, e.g., J.P. Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 424 (2d Cir. 2005).  While the Second Circuit caselaw focuses primarily on deference to foreign bankruptcy proceedings, the policy justification does not differ with respect

to parallel state court proceedings in the nature of bankruptcy.  Cf. Royal & Sun Alliance, 466

F.3d at 93 (concluding that the test for abstention in deference to foreign and state court parallel

proceedings is similar).

The proceedings in the consolidated Dwek action in New Jersey appear to be in the

nature of bankruptcy proceedings.  The New Jersey court has frozen all of Dwek's assets and set

up an expedited procedure for creditors to file claims on the assets.  As of November 1, 2006, the

court has appointed a Trustee in Liquidation charged with marshalling and liquidating the assets

and distributing them to Dwek's creditors.  The Trustee has all of the powers of a receiver in

bankruptcy and is clearly engaged in the "equitable and orderly distribution" of Dwek's property.

As such, the Dwek action should be treated as a parallel bankruptcy proceeding, to which a

federal court would normally defer.

The Second Circuit has identified a limited exception to the general rule that federal

courts should abstain in deference to parallel bankruptcy proceedings.  In Koreag, Controle et

Revision S.A. v. REFCO F/X Associates, Inc., 961 F.2d 341, 349 (2d Cir. 1992), the Second

Circuit held that district courts should not defer to parallel bankruptcy proceedings when a party

asserts a bona fide ownership interest in the property at issue.  "Bona fide questions of property

ownership…are antecedent to the distributive rules of bankruptcy administration because they

seek to determine whether an asset is actually part of the debtor's estate, rather than deciding the

entitlement of certain creditors to pieces of that estate."  J.P. Morgan Chase Bank, 412 F.3d at

426.  A district court may decide a question of property ownership without interfering with the

"equitable and orderly distribution of assets" in an ongoing parallel bankruptcy proceeding and

therefore, under Koreag, should not abstain.

In this case, KLCC has asserted an ownership claim to the assets in the Citigroup account, not a claim as a creditor.  KLCC claims that it owns the assets outright, not that it has a mere security interest in assets owned by Dwek.  KLCC claims that when the assets were transferred from the Dwek account to a KLCC account at Citigroup pursuant to the pledge and control agreements, its ownership interest was perfected.  D and D Trust, on the other hand, claims that the assets are owned by Dwek and that it has a security interest in them that is superior to any interest that KLCC has.  This raises a bona fide question of property ownership.[3]  The issue before the Court is who owns the assets—KLCC or Dwek—and that issue is antecedent to any questions of equitable distribution in the New Jersey action.

The type of exceptional circumstances that might justify abstention in favor of parallel state proceedings outside the bankruptcy context are not present in this case.  In Colorado River, the Supreme Court laid out several factors that a court should consider in assessing whether the "clearest of justifications" for abstention exist.  424 U.S. at 819.  They include: (1) the identity of the court that first assumed jurisdiction over the res, (2) the relative inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, (4) the order in which jurisdiction is obtained, (5) which sovereign's law will provide the rules of decision, and (6) the adequacy of state court proceedings to protect federal rights.  Id. at 818; Moses H. Cone, 460 U.S. at 23-27.  Colorado River did not lay out a "mechanical checklist" and none of these factors are

---

[3] KLCC's ownership claim is not like the claim in J.P. Morgan Chase Bank where the Second Circuit held that the Koreag exception applies only to *bona fide* questions of property ownership.  412 F.3d at 427.  In that case, J.P. Morgan acted as a facility agent for a consortium of lenders on a loan to Altos Hornos by establishing and managing a collection account into which the debtor would make payments and from which J.P. Morgan would distribute the funds to other consortium members.  Id. at 419-21.  After Altos Hornos filed for bankruptcy in Mexico, several of its customers mistakenly made payments directly into the collection account at J.P. Morgan which then claimed that it owned those assets because the account was in its name.  Id.  The Court held that J.P. Morgan had not raised a bona fide issue of property ownership because the assets in the account never belonged to the bank.  Instead they were mistakenly paid by the debtor after filing bankruptcy and J.P. Morgan had a contractual obligation to use those funds to pay down the same debt that was the subject of the Mexican bankruptcy proceedings; it could not do with the money as it pleased.  Id. at 427.  Therefore, the district court had properly abstained in deference to the Mexican bankruptcy proceedings.  Id.  KLCC, on the other hand, claims that the assets were transferred to it free and clear before the bankruptcy-like proceeding against Dwek in New Jersey began.

determinative, but the balance is "heavily weighted in favor of the exercise of jurisdiction."

<u>Moses H. Cone</u>, 460 U.S. at 16.

      An analysis of these factors in the instant case does not show any exceptional circumstances that would overcome the "virtually unflagging obligation" of the federal courts to exercise jurisdiction.  Whether the alternative forum, New Jersey, has assumed jurisdiction over the property at issue in this case through its order freezing Dwek's assets depends on who owns the property—an issue that, as discussed above, is antecedent to the distributive rules of bankruptcy and properly decided in the federal forum.  The mere fact that the property is physically present in Sea Girt, New Jersey does not mean that the New Jersey courts have assumed jurisdiction over it.  The relative convenience of the state and federal forums cuts both ways.  While it may be more convenient for D and D Trust to litigate in New Jersey, the Southern District of New York is not too distant and the New Jersey court has made it clear that it would not begin to consider the issues in the interpleader action until at least 120 days after filing.  The inconvenience in distance is offset by the convenience of expeditious proceedings.  The avoidance of piecemeal litigation seems to be the strongest factor in favor of the New Jersey forum, but because the property ownership question is antecedent to the distributive questions in the New Jersey action, there is no risk of inconsistent judgments or interference with the equitable and orderly distribution of assets.  The order in which jurisdiction was obtained, again, depends on the antecedent question of who owns the property:  If Dwek owns it then New Jersey obtained jurisdiction first, but if KLCC owns it then New York was first to obtain jurisdiction.  Assuming, without deciding, that New Jersey law would control, the issue of property ownership does not present a complex or unsettled issue of state law or involve important state policies such that abstention would be justified.  Instead the Court would be asked to do what any federal court

does when it sits in diversity:  to apply state substantive law.  Finally, there are no federal rights at stake.  These are not the type of exceptional circumstances that would justify abstention under Colorado River.

Having determined that the case should not be dismissed for lack of personal jurisdiction, and that the Court should not abstain in deference to parallel proceedings in New Jersey without determining the antecedent issue of ownership, we turn now to the propriety of the interpleader action.

III

An interpleader action is a useful tool for determining ownership of a discrete item of property in the possession of a disinterested stakeholder that is subject to multiple or competing claims.  The action usually proceeds in two stages:  First, the court determines whether the interpleader action is appropriate; second, the court determines the rights of the competing claimants to the fund.  Fidelity Brokerage Services, LLC v. Bank of China, 192 F. Supp. 2d 173, 178 (S.D.N.Y. 2002).  The issue before the Court on Citigroup's motion is only the first stage. Citigroup argues that because it is a disinterested stakeholder and has brought a proper interpleader action, it is entitled to be discharged from liability for the property.  KLCC argues that the interpleader action is not appropriate and should be dismissed because Citigroup did not reasonably fear multiple liability and Citigroup cannot be discharged because of KLCC's counterclaims alleging independent liability.  D and D Trust has also represented that it has claims of independent liability against Citigroup, which it would assert in an answer if its motion to dismiss is denied.

A. *Propriety of the Interpleader Action*

To sustain a statutory interpleader action under § 1335, the stakeholder must be in possession of property worth $500 or more.  28 U.S.C. § 1335(a).  The stakeholder must legitimately fear multiple liability or the vexatious conflicting claims to the same fund.  Fidelity Brokerage, 192 F. Supp. 2d at 178 (citing Washington Elec. Co-op, Inc. v. Paterson, Walke & Pratt, P.C., 985 F.2d 677, 679 (2d Cir. 1993)).  There must be two or more adverse claimants of diverse citizenship as defined in § 1332.  28 U.S.C. § 1335(a).  Finally, the stakeholder must deposit the property with the registry of the court or post a bond payable to the clerk of the court for the value of the property.  Id.

Citigroup has clearly satisfied the first and third requirements for a valid interpleader action.  It is in possession of property worth well in excess of $500 in which it claims no interest.  The adverse claimants in this case satisfy the minimal diversity requirements because they are citizens of different states.[4]  KLCC argues that Citigroup has failed to satisfy the second requirement, however, because it could not have reasonably feared multiple liability.  KLCC claims that Citigroup did not adequately investigate the merits of D and D Trust's competing claim and that its claim to ownership of the property was so strong (and D and D's claim so weak) that Citigroup could not reasonably fear any exposure to double liability.

Courts have consistently held that the fear of multiple claims and vexatious litigation are enough to sustain an interpleader action regardless of the merits of the competing claims.  E.g., Fidelity Brokerage, 192 F. Supp. 2d at 178; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente, No. 98 Civ. 1756, 2001 WL 11070 at *5 (S.D.N.Y. Jan. 4, 2001).  Wright, Miller, and Kane note that "it is immaterial whether the stakeholder believes that all the claims against the

---

[4] KLCC is a limited liability company organized and existing under the laws of New York with its principal place of business in New York.  D and D Trust is a trust organized and operating under the laws of New Jersey with its principal place of business in New Jersey.

fund are meritorious.  Indeed, in the usual case, at least one of the claims will be quite tenuous."
7 Wright, Miller & Kane, supra § 1704.  "The stakeholder should not be obliged at its peril to
determine which of two claimants has the better claim."  John Hancock Mutual Life Ins. Co. v.
Kraft, 200 F.2d 952, 954 (2d Cir. 1953).

In this case, Citigroup has a reasonable fear of conflicting claims to the property giving
rise to the vexation of multiple suits.  KLCC claims an unencumbered ownership interest in the
property and has already filed an action in New York state court to obtain the assets held in the
Citigroup account.  D and D Trust claims a security interest in the property (which it maintains is
still owned by Dwek) and has made it clear that it will seek to recover the property from
Citigroup either in this Court or in New Jersey.  It was not incumbent on Citigroup to evaluate
the merits of these competing claims or determine at its peril which claim was better.  Citigroup
had a legitimate fear that it would be subject to multiple conflicting suits seeking to recover the
funds; this is the situation for which interpleader was designed.

Citigroup has sought the Court's guidance in satisfying the final interpleader requirement
of depositing the property with the registry of the court or posting a bond.  Because of the
volatile and unique nature of the property, Citigroup contends that liquidating it and paying the
proceeds into the registry of the court would result in significant losses.  Likewise, to avoid
further reductions in value, the assets need active management.  Citigroup contends that posting
a bond for the value of the property, while it would avoid the problems associated with
liquidating the property, would not provide for the active management of the property creating a
risk of further loss in value.  Although deposit of the property with the Court or the posting of a
bond is considered a jurisdictional requirement for statutory interpleader under § 1335, see, e.g.,
Metal Transp. Corp. v. Pacific Ventures S.S. Corp., 288 F.2d 363, 365 (2d Cir. 1961),

interpleader is an equitable remedy that should be applied liberally, see State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 533 (1967) and courts have substantial flexibility in its application. For example, courts regularly give a stakeholder an opportunity to comply with the deposit requirement before dismissing an interpleader action.  See Landmark Chemicals, S.A. v. Merrill Lynch & Co., 234 F.R.D. 62 (S.D.N.Y. 2005); American Smelting & Refining Co. v. Naviera Andes Peruana S.A., 182 F. Supp. 897, 898 (S.D.N.Y. 1959); 7 Wright, Miller & Kane, supra § 1716.

Citigroup suggests that the property be held in the Court's name in an account at a broker-dealer and that the Court issue an order providing for the joint management of the property by KLCC and D and D Trust pending the outcome of this action.  The parties have indicated that, prior to the commencement of this action, there was some discussion about joint management of the property to preserve its value pending an ultimate resolution of the issue of ownership.  This discussion apparently broke down when Citigroup insisted on discharge as a condition of any agreement.  In light of the fact that Citigroup claims no interest in the property, and that it appears to be in the interest of both competing claimants that the property be actively managed, the parties are hereby given thirty days to present the Court with a consent judgment dealing solely with the issue of the form in which the property should be deposited with the Court and how it should be managed pending the final resolution of the ownership claims.  If the parties fail to reach an agreement on this matter, the parties are each directed to submit a proposed order for how the property should be managed and deposited with the Court and the Court will adopt an order or direct Citigroup to post a bond.  Citigroup will have ten days from the date of entry of the Court's order dealing with the management of the property to comply

with the order.  The interpleader action will be sustained as appropriate upon Citigroup's compliance.

### B.  Citigroup's Motion for Discharge

Citigroup has moved the Court to be discharged from the interpleader action because it has no claim to any interest in the property.  When a court decides that an interpleader action is appropriate, it may discharge a disinterested stakeholder from further liability.  28 U.S.C. § 2361; see 7 Wright, Miller & Kane, supra § 1714.  Courts will not discharge an interpleader stakeholder who is not disinterested—that is where the stakeholder has some claim to the property at issue in the interpleader.  See Bankers Trust Co. of W. New York v. Crawford, 559 F. Supp. 1359, 1365 (W.D.N.Y. 1983).

Citigroup is not an interested stakeholder in the sense that it claims some interest in the property that is the subject of the interpleader; it claims none.  However, KLCC has asserted counterclaims against Citigroup alleging independent grounds for liability and D and D Trust has indicated that it will do the same in its answer.  KLCC's counterclaims allege breach of contract, conversion, negligence, and breach of covenant of good faith and fair dealing.

The Court's approach in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente, No. 98 Civ. 1756, 2001 WL 11070 (S.D.N.Y. Jan. 4, 2001) is instructive in this case.  In Merrill Lynch, the stakeholder had met the requirements for a valid interpleader action and claimed no interest in the funds at issue, however one of the claimants made a counterclaim alleging an independent basis for liability based on breach of contract and conversion.  Id. at *5-7.  The Court sustained the interpleader and discharged the stakeholder from liability for the funds deposited with the Court, but did not dismiss the stakeholder from the case.  Id. at *7.  Instead, the Court denied

cross motions for summary judgment on the counterclaim and held that it would revisit the breach of contract and conversion claims after the second stage of the interpleader if the funds were found to belong to that claimant. Id.  The Second Circuit has sanctioned such a "three stage" approach in Royal School Laboratories, Inc. v. Town of Watertown, 358 F.2d 813, 817 (2d Cir. 1966) in which Judge Friendly held that the district court should first resolve which claimant was entitled to the funds in the second stage of interpleader and then, if necessary, turn to a claimant's counterclaim in tort.

Like the stakeholder in Merrill Lynch, Citigroup has no claim to any interest in the property, but faces counterclaims alleging independent liability to the claimants.  Because the Court has determined that interpleader is appropriate in this case and because Citigroup is a disinterested stakeholder, Citigroup is discharged from further liability for the property held in the KLCC account on the condition that it deposits the property with the Court in accordance with a consent judgment submitted by the parties or other order of the Court.  Citigroup is not, however, dismissed from the case.  The Court will consider KLCC's counterclaims and any counterclaims that D and D Trust asserts in its answer after the issue of ownership of the property is resolved.


III

KLCC moved for partial summary judgment dismissing the interpleader complaint and granting injunctive relief on its sixth counterclaim directing Citigroup to transfer the property to a KLCC account at Bear Stearns & Co., as previously instructed.  As discussed above, interpleader is appropriate in this case and is sustained on the condition that Citigroup comply

with the requirement to deposit the property with the Court.  Therefore KLCC's motion for summary judgment dismissing the interpleader complaint is denied.

KLCC's motion for summary judgment on its counterclaim for an injunction directing Citigroup to transfer the property to a KLCC account at Bear Stearns is premature.  To date, the parties have not conducted any significant discovery and D and D Trust has yet to file an answer. The Court is reluctant to grant summary judgment on such a limited record.  Only in the rarest of cases should summary judgment be granted against a party who has not had the opportunity to conduct discovery.  Hellstrom v. U.S. Dept. of Veteran Affairs, 201 F.3d 94, 97 (2d Cir. 2000); see Fed. R. Civ. P. 56(c), (f).  Accordingly, KLCC's motion for summary judgment on its counterclaim is denied without prejudice.


IV

For the reasons stated above:  D and D Trust's motion to dismiss for lack of personal jurisdiction or abstention in deference to the proceedings in New Jersey is denied.  D and D Trust is directed to file an answer within the time period allotted by the Federal Rules of Civil Procedure.

Citigroup's interpleader action is sustained and Citigroup is discharged from further liability for the assets in the KLCC account conditioned on Citigroup satisfying the fourth requirement for statutory interpleader by depositing the assets with the Court or posting a bond. Within thirty days, the parties are directed to either: (1) jointly submit a consent judgment specifying in what form the assets should be deposited with the registry of the court and how the assets should be managed pending resolution of the ownership issue, or (2) each submit a proposed order specifying in what form the assets should be deposited with the registry of the

court and how the assets should be managed pending resolution of the ownership issue or, in the alternative, stating that Citigroup should post a bond.  Citigroup shall then have ten days from the entry of the consent judgment or order to comply, at which point the interpleader will be sustained and Citigroup will be discharged.  If Citigroup fails to comply, the interpleader will be dismissed.

Pursuant to 28 U.S.C. § 2361, KLCC's action against Citigroup in New York state court, encaptioned KLCC Investments, Inc. v. Smith Barney, a division of Citigroup Global Markets, Inc., Index No. 602505/06, is stayed pending further order of this Court.  The parties are enjoined from instituting or prosecuting any other actions in any other court affecting the property at issue in this interpleader action.

KLCC's motion for summary judgment is denied without prejudice.

Within ten days from the date that Citigroup complies with the judgment or order regarding the deposit of the assets with the Court, the parties are directed to submit a proposed schedule for discovery on the issue of ownership and submission of a pretrial order.

Citigroup is not dismissed from the case.  The Court will consider any counterclaims against Citigroup after resolution of the ownership issue.  At that time the Court will also entertain any motions that, in light of the resolution of the ownership issue, the Court should abstain in deference to proceedings in New Jersey or New York state court.

**SO ORDERED.**

Dated:  January 11, 2007
        New York, NY

_____
U.S.D.J.

18